Brooke, J.
I think the 16th and 17th sections of the will plainly give the property destined for the establishment of schools, to the executors, and not to the literary fund. If the plan for the establishment of the three schools contemplated in the 16th section could not be carried into effect, then the provision in the 17th section authorizes the executors to use the fund in constituting a part of the literary fund of the state of Virginia, to be used by the school commissioners of Albemarle and Nelson in the manner and proportions specified, and from time to time as the legislature may think advisable. This, 1 think, refers both to the principal and interest in the fund. The whole argument, then, to prove that the literary fund was a corporation incapable to take the fund has no application to this construction of the will. Giving to it the construction contended for, I think none of the cases cited would, under the laws constituting the literary fund, and incorporating the public officers having the direction and management of it, authorize them to take the fund for the objects designated by the will. That corporation seems to have been constituted for the purpose of administering the literary fund according to the several laws and its charter, and to be responsible for the administration of that fund only, or such other funds as by law it might be authorized to take. If then the executors in a reasonable time can procure such a law; if the legislature shall (in the words of the will) think it advisable to pass ' such a law as will authorize the corporation to take the *152 fund bequeathed to the executors by the will, on the terms of ¡he will; there will be no difficulty in currying into effect the intentions of the testator. It is on these grounds that I concur in the opinion delivered by the president.
Tucker, P.
Upon mature consideration of this will, I am of opinion that its true construction removes every difficulty, and renders unnecessary the consideration of various questions made in the cause.
First, I shall remark that according to my apprehension, here'is no direct devise to the literary fund. The effect of the will is to devise the estate real and personal to the executors, for they are to “ use it in constituting a part of the literary fund.” The testator does not himself constitute the estate a part of it, for he had in effect preferred another disposition, and it was only in failure of that, that this destination was given to it. Hence he finds it necessary to vest the power of disposition in the executors. They are to constitute the estate a part of the literary fund. And the exercise of this power implies a devise to them for the purpose declared.
Secondl}7,1 understand the last sentence of the clause, in these words, “an act of assembly for said object, supposed can be obtained,” as extending to the whole clause, and not merely to the provision for the use of the principal. 1. Because it stands in a separate and distinct sentence, equally applicable to the whole as to part of the clause. 2. Because it was equally necessary for the whole as for part. 3. Because, as to the use of the principal, a legislative act had been already, in effect, adverted to, by the words “ from time to time as the legislature may think advisable ;” for their resolution as to that matter could only be declared by an act of assembly.
*153 Thirdly, by whom is the act to be obtained f Clearly by those to whom the trust is confided of constituting the estate a part of the literary fund,* that is, by the executors.
Thus understood, the will is equivalent to a devise of his real and personal estate to the executors, in trust for the purpbsé of procuring an act of assembly with the necessary provisions for constituting the funds devised a part of the literary fund, in strict conformity with the terms, provisions and conditions of the will. By such an act of assembly, all the difficulties suggested by the fertile mind of the counsel will be avoided, and the benevolent intentions of the testator carried into complete effect. And as this act is to be obtained by the executors, the contingency of its pa ssage is within a life or lives in being, and therefore not too remote. The case is thuo very much the same with that of The Sailor's Snug Harbour, 3 Peters 100,
I am of opinion that the decree should be reversed, so far as respects the declaration th:d the devise in the 17th clause of the will is void ; and that the bill should be dismissed with costs as to the president and directors of the literary fund’,, without prejudice to the rights of the parties, or their assertion of them hereafter, in the event of the failure to procure the uecessary act of assembly within the period limited.
The decree of the court of appeals was as follows :
“ The court is of opinion th.it so much of the said decree of the circuit court as declares that the devise in the seventeenth clause of the will of the testator is void, is erroneous. Therefore it is decreed and ordered that the said decree, so far as the same is above declared to be erroneous, be revers ad and annulled, and that the appellee who ic an executor, out of the estate of his testator in his hands to be administered, and the other appellees in their own righ c, do pay unto the ap *154 pellants the costs expended in the prosecution of the appeal aforesaid here. And the court proceeding to pronounce such decree, in lieu of that part reversed as % . . , . \ , aforesaid, as the said circuit court ought to have pronounce(j) further decreed and ordered that the bill, as to the appellants, be dismissed, and that the appellees who were plaintiffs in the said circuit court do pay unto the appellants their costs by them in the said circuit court expended. But this decree is to be without prejudice to the rights of the parties, or to their assertion of them hereafter, in the event of the failure to procure the necessary act of assembly within the period limited.”

Note.—Since this decision, an act of assembly has been passed concerning the estate of Martin Dawson, which will be found in the session acts oí' 1840-41, eh. 26. p. 52.